

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

**AMANDA PIERRE,** by her parent,
Louise Pierre,

                                                          **PETITION TO REVIEW
                                                          ORDER OF STATE
                                                          REVIEW OFFICER**

                    Petitioners,

**DEPARTMENT OF EDUCATION
CITY OF NEW YORK,**

                    Respondents.
-------------------------------------------------X

   **Your Honor:**

            Petitioner, by its attorney, Sanford S. Stevens, requests the court to review
the decision of the State Review Officer which overruled the Finding of Fact and
Decision of the Impartial Hearing Officer assigned to hear this matter.

1.    Amanda Pierre, is a child with disabilities, and as such is covered by the
Individuals with Disabilities Act ("IDEA").

2.    On October 6, 2006 the Committee on Special Education ("CSE") met to discuss
the needs of Amanda.  The recommendations were not educationally appropriate for
Amanda.

3.    On October 13, 2007 Amanda requested an impartial hearing as provided by the
IDEA.

4.    On October 16, 2007 the Department of Education "(DOE") challenged the
request as insufficient.

5.    On October the Impartial Hearing Officer ruled that the request for an impartial
hearing was sufficient.

6.    On November 16, 2007 the DOE mailed their recommended placement to
Amanda.

7.    The DOE admits that this recommended place was not appropriate for Amanda.
They termed the recommended placement a mistake.

Page two

8.     On December 6, 2007 the DOE made a second recommended placement for Amanda for the school year, which had started the previous September.

9.     An Impartial Hearing was held on January 11, 2007 and again on February 14, 2007.

10.     At the hearings 5 medical providers plus 2 educators testified that the parent's placement of Amanda at Winston Prep was appropriate.

11.     The parent of Amanda informed the Impartial Hearing Officer that Amanda had attended Winston Prep for the academic years 2005-2006 as well as 2006-2007.

12.     Only 1 witness, a social worker, testified on behalf of the DOE's second recommended placement.

13.     The social worker witness for the DOE had only briefly met Amanda at Winston.

14.     The Impartial Hearing Officer found that the DOE failed to offer Amanda a Free Appropriate Public Education ("FAPE") within the time required by law.

15.     The Impartial Hearing Officer also found that Winston Prep offers Amanda an appropriate educational program and ordered the DOE to pay for Amanda's tuition at Winston Prep.  Exhibit 'A'

16.     On April 17, 2007 the DOE appealed the decision of the Impartial Hearing Officer with the New York State Education Department.

17.     On May 11, 2007 Amanda offered to attend a hearing with the New York State Review officer.

18.     On May 24, 2007 the Office of State Review denied Amanda's request.

19.     On June 13, 2007 the State Review Officer overruled the Impartial Hearing Officer's Findings of Fact and Decision and annulled her decision in its entirety. Exhibit 'B'

Page three

## THE DECISION OF THE STATE REVIEW OFFICE SHOULD BE SET ASIDE
## FOR THE FOLLOWING REASONS

20.    The Impartial Hearing Officer found that the request for an impartial hearing met the sufficiency standard required. Amanda believes that the request was sufficient, but even if deemed insufficient, Amanda should not be deprived of the protections of the IDEA.

21.    Amanda had every right to rely upon the decision of the Impartial Hearing Officer as to sufficiency.

22.    The impartial hearing is the proper forum where all issues are heard and should be adjudicated by the impartial hearing officer.

23.    The IDEA is a protection of the rights of a disabled child. In this case the DOE is attempting to use the statute to shield them from their responsibility to offer an appropriate placement for Amanda.

**WHEREFORE,**

Amanda Pierre request this court to set aside the decision of the state review officer and reinstate the Findings of Fact and Decision of the Impartial Hearing Officer, or otherwise permit Amanda to pursue her claim.

Respectfully submitted,

DATED: July  9  2007

Sanford S. Stevens
SANFORD S. STEVENS, PC
Attorney for Amanda Pierre
244 Madison Avenue (#303)
New York, New York 10016
( 212 )  228 - 7273 (phone/fax)

## FINDINGS OF FACT AND DECISION

Case Number:            107502

Student's Name:         Amanda Pierre

Date of Birth:          December 16, 1992

District:               22

Hearing Requested By:   Parent

Dates of Hearing:       January 11, 2007
                        February 14, 2007

Hearing Officer:        Esther Mora, Esq.


**Corrected**

Hearing Officer's Findings of Fact and Decision                                    1

Case No. 107502

_____

## NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 11, 2007

| | | |
|---|---|---|
| Sanford Stevens | Attorney | Parent |
| Louisane Pierre | Parent | |
| Roosevelt Clerisme | Psychiatrist | Parent |
| Shelley Francis | Audiologist | Parent |
| Linda Ford | Psychotherapist | Parent |
| Michelle Bessler | Vision Therapist | Parent |
| Hilary Steuer | Attorney | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED FEBRUARY 14, 2007

| | | |
|---|---|---|
| Sanford Stevens | Attorney | Parent |
| Louisane Pierre | Parent | |
| Anthony Foti | Psychiatrist | Parent |
| Sue Feldman | Dean, Winston Prep. | Parent |
| Jamie Levine | Focus Instructor | Parent |
| Hilary Steuer | Attorney | Department of Education |
| Andrea Tabot | Social Worker | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    2

Case No. 107502

_____

The parent's request for an impartial hearing pursuant to the Individuals with Disabilities Education Act was received on October 13, 2007, and a hearing was held before me on January 11 and February 14, 2007.

## SUMMARY OF THE EVIDENCE

### Evaluation and Recommendations

The parent referred the student to the Committee on Special Education (CSE) on August 25, 2006. (Exh. 13) A social history update was conducted on September 16, 2006. (Exh. 17) The CSE also obtained other evaluations, such as a psychoeducational evaluation (Exh. 5), a physical examination report (Exh. 8), an auditory processing evaluation (Exh. 10), progress reports (Exhs. 11, 12, 18), a student vision report (Exh. 19) a letter from a hearing and speech center (Exh. 20) and a letter from a social worker (Exh. 21) An IEP was developed on October 6, 2006. The CSE concedes that its first site offer was inappropriate. The record indicates that a final site offer was not made until on or about December 6, 2006.

### Witnesses

A CSE social worker testified on behalf of the Department. (Tr. at 209-227)

The student's psychiatrist, audiologist, psychotherapist, ophthalmologist, psychologist, focus instructor, dean and parent testified on behalf of the parent.

The student's psychiatrist testified that he treated the student since 1976. She was diagnosed with oppositional defiant disorder, bipolar disorder, attention deficit and hyperactivity disorder. She is learning disabled. The psychiatrist opined that the student required special education in a small class setting. (Tr. at 18-26)

The student's audiologist testified that he first saw the student in May 2005. He diagnosed her with auditory processing disorder. He opined that she required special education in a quiet, small class setting. (Tr. at 54-73)

The student's psychotherapist testified that she has treated the student for about three to four years. The working diagnosis is currently oppositional defiant disorder and she is seeking to rule out bipolar disorder. She opined that the student required special education in a small class setting of no more than twelve students. (Tr. at 77-83)

The student's ophthalmologist testified that she first treated the student in July 2005. The student's diagnosis included severe ocular motor dysfunction, accommodative insufficiency and infacility, severe binocular vision disorder of the converse and excess type, and severe visual perceptual motor deficits in all areas. She opined that the student required special education in a small class setting. (Tr. at 85-94)

The student's psychologist testified that he first saw the student in April 2006. His diagnosis of the student was attention deficit and hyperactivity disorder and conditional defiant disorder. He opined that the student required special education in a small class setting. (Tr. at 180-185)

The student's focus instructor and the student's dean at Winston testified regarding the student's needs and the services she received at Winston. They opined that the student was receiving appropriate services and was benefiting from the services she received. (Tr. at 191-206)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A threshold issue in this case is whether the student resides in New York City. I find that for the 2005-2006 school year the parent has failed to meet her burden to show that the student resided in New York City. Therefore, the parent's request for tuition reimbursement for the 2005-2006 school year is denied. However, regarding the 2006-2007 school year the record indicates that the student did reside in New York City.

As was recently reiterated in Appeal No. 06-138, the central purpose of the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1487) is to ensure that students with disabilities have available to them a free appropriate public education (FAPE) (20 U.S.C. § 1400[d][1][A]; Schaffer v. Weast, 126 S. Ct. 528, 531 [2005]; Bd. of Educ. v. Rowley, 458 U.S. 176, 179-81, 200-01 [1982]; Frank G. v. Bd. of Educ., 459 F.3d 356, 371 [2d Cir. 2006]). A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformity with a written IEP (20 U.S.C. § 1401[8][D]; 34 C.F.R. § 300.17; see 20 U.S.C. § 1414[d]; 34 C.F.R. §§ 300.22, 300.320). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 C.F.R. § 300.114[a]; 8 NYCRR 200.6[a][1]).

Case No. 107502

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 [1985]; Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (Burlington, 471 U.S. at 370-71). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper Individualized Education Program (IEP)" (id.; see 20 U.S.C. § 1412[a][10][C][ii]; 34 C.F.R. § 300.148).

The first step is to determine whether the district offered to provide a FAPE to the student (see Mrs. C. v. Voluntown, 226 F.3d 60, 66 [2d Cir. 2000]). A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; Cerra, 427 F.3d at 192). While school districts are required to comply with all IDEA procedures, not all procedural errors render an IEP legally inadequate under the IDEA (Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). If a procedural violation has occurred, relief is warranted only if the violation affected the student's right to a FAPE (J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 69 [2d Cir. 2000]).

The Second Circuit has determined that "a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression'" and if the IEP affords the student with an opportunity greater than mere "trivial advancement" (Cerra, 427 F.3d at 195, quoting Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 130 [2d Cir. 1998]), in other words, is likely to provide some "meaningful" benefit (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 381-82 [S.D.N.Y.

2006]). The burden of persuasion in an administrative hearing challenging an IEP is on the party seeking relief (see Schaffer, 126 S. Ct. at 537 [finding it improper under the IDEA to assume that every IEP is invalid until the school district demonstrates that it is not]). Accordingly, petitioner, as the party seeking relief at the impartial hearing, has the burden of persuasion.

An appropriate educational program begins with an IEP which accurately reflects the results of evaluations to identify the student's needs, establishes annual goals related to those needs, and provides for the use of appropriate special education services (Application of the Bd. of Educ., Appeal No. 06-076; Application of a Child with a Disability, Appeal No. 06-059; Application of the Bd. of Educ., Appeal No. 06-029; Application of a Child with a Disability, Appeal No. 04-046; Application of a Child with a Disability, Appeal No. 02-014; Application of a Child with a Disability, Appeal No. 01-095; Application of a Child Suspected of Having a Disability, Appeal No. 93-9).

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 [1985]; Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (Burlington, 471 U.S. at 370-71). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP" (id.; see 20 U.S.C. § 1412[a][10][C][ii]; 34 C.F.R. § 300.148).

In this instance I find that the department failed to offer FAPE for the 2006-2007 school year within the time required by law. The CSE concedes that the site offered by letter dated November 16, 2006 was inappropriate. (Exh. E) The record indicates that the CSE did not offer another site until on or about December 6, 2006.

Hearing Officer's Findings of Fact and Decision                                    6

Case No. 107502

_____

The record also establishes that Winston is an appropriate program that the student is progressing, that equitable considerations support the parent's request for tuition reimbursement, and that the tuition is reasonable.

I have considered all of the remaining claims made by the parties and find them to be unsupported by the record or without merit.

## ORDER

The Department of Education is to reimburse the parent for the student's attendance at Winston for the 2006-2007 year.  Payment is to be made upon presentation of acceptable proof of payment.

Dated: March 15, 2007

Corrected:  March 26, 2007 (Corrections made on Page 6)

ESTHER MORA, ESQ.
Impartial Hearing Officer

EM:ds

## PLEASE TAKE NOTICE

**Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period."  (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision                                7

Case No. 107502

---

# DOCUMENTATION ENTERED INTO RECORD JANUARY 11, 2007

| | | |
|---|---|---|
| A. | Louisane Pierre's Memo to Esther Mora, 12/4/06, 1 p. | Parent |
| B. | Louisane Pierre's Memo to CSE Region 9, 4 pp. | Parent |
| C. | Parent's Facsimile to Michelle Gay with receipt, 6/16/06, 2 pp. | Parent |
| D. | Parent's Facsimile to Verna Phillip CSE Region 9 with Receipt, 8/25/06, 3 pp. | Parent |
| E. | Paul Robeson CSE Region 9 High School Placement Letter, 11/16/06, 2 pp. | Parent |
| F. | IEP, 12/14/06, 23 pp. | Parent |
| G. | Psychiatric Summary, 10/20/06, 2 pp. | Parent |
| H. | Psycheducational Evaluation, 4/20, 4/28/& 5/13/06, 11 pp. | Parent |
| I. | Letter from Psychotherapist, 10/2/06, 1 p. | Parent |
| J. | Central auditory Processing Evaluation, 6/30/06, 5 pp. | Parent |
| K. | Optometric Vision Evaluation, 9/26/06, 3 pp. | Parent |
| L. | Student Loan Account Summary, 8/14/06, 4 pp. | Parent |
| M. | Student Loan Account Summary, 5/22/06, 7 pp. | Parent |
| N. | Louisane Pierre's Pay Stubs, 8/18/-12/8/06, 5 pp. | Parent |
| P. | Federal Income Tax Return, 12/1/06, 10 pp. | Parent |
| Q. | Noel Pierre's 2005 Federal Income Tax Return, 12/1/06, 8 pp. | Parent |
| R. | Tax and Insurance Account Disclosure Statement, 9/15/06, 2 pp. | Parent |

Hearing Officer's Findings of Fact and Decision                                8

Case No. 107502

---

| S. | Delta SkyMiles Credit Card Statement, 7/06-12/06, 38 pp. | Parent |
|---|---|---|
| T. | Blue Cash Credit Card Statement, 7/06-11/06, 31 pp. | Parent |
| U. | Rewards Gold Credit Card Statement, 6/06-11/06, 54 pp. | Parent |
| V. | KeySpan Account Statements, 12/05-11/06, 37 pp. | Parent |
| W. | Long Island Power Authority Account Statement, 11/05-11/06, 36 pp. | Parent |
| X. | Home Depot Credit Card Statement, 10/05-11/05, 24 pp. | Parent |
| Y. | Cablevision Account Statement, 7/06-11/06, 21 pp. | Parent |
| Z. | Cingular Mobile Phone Account Statement, 6/06/11/06, 50 pp. | Parent |
| AA. | SCORE Academic Summary, 7/28/06, 4 pp. | Parent |
| BB. | Winston Prep Standardized Test and Progress Report, Fall '05, 9 pp. | Parent |
| CC. | Winston Prep Progress Report, Winter '06, 6 pp. | Parent |
| DD. | Winston Prep Progress Report, 2006, 6 pp. | Parent |
| EE. | Winston Prep Age Equivalent Score, Spring 05-06, 7 pp. | Parent |
| 1. | Valley Stream 05-06 IEP, 6/21/05, 7 pp. | Department of Education |
| 2. | Winston Prep Progress Report, Fall 05, 7 pp. | Department of Education |
| 3. | Winston Prep Progress Report, Winter 06, 6 pp. | Department of Education |
| 4. | CSE Contact Sheet, 3/20/06, 1 p. | Department of Education |
| 5. | Psychoeducational Evaluation, 5/13/06, 11 pp. | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    9

Case No. 107502

_____

| | | |
|---|---|---|
| 6. | Testing Data, Spring 06, 7 pp. | Department of Education |
| 7. | Letter from Dr. Clerisme, 6/1/06, 1 p. | Department of Education |
| 8. | Physical Examination Report, 6/11/06, 2 pp | Department of Education |
| 9. | Letter to Michelle Gay with Cover, 6/16/06, 2 pp. | Department of Education |
| 10. | Auditory Processing Evaluation, 6/30/06, 5 pp. | Department of Education |
| 11. | Winston Prep Progress Report, Spring 06, 6 pp. | Department of Education |
| 12. | SCORE Progress Report, 7/28/06, 4 pp. | Department of Education |
| 13. | Request for Evaluation with Cover, 8/25/06, 3 pp. | Department of Education |
| 14. | CSE Desk Tracking Sheet, 8/25/06, 1 p. | Department of Education |
| 15. | CAP Screen, 8/25/06, 1 p. | Department of Education |
| 16. | CSE Conference Summary, 9/12/06, 1 p. | Department of Education |
| 17. | Social History Update, 9/16/06, 3 pp. | Department of Education |
| 18. | Winston Prep Testing Report, 9/25/06, 2 pp. | Department of Education |
| 19. | Student Vision Report, 3 pp. | Department of Education |
| 20. | Letter from Hearing and Speech Center, 10/2/06, 1 p. | Department of Education |
| 21. | Letter from Linda Ford, LCSW, 10/2/06, 1 p. | Department of Education |
| 22. | IEP, 10/6/06, 22 pp. | Department of Education |
| 23. | Request for Impartial Hearing, 10/7/06, 1 p. | Department of Education |
| 24. | Letter and E-mail Re: 05-06 Hearing, 11/2/06, 10/8/06, 2 pp. | Department of Education |
| 25. | FNR, 12/6/06, 1 p. | Department of Education |

Hearing Officer's Findings of Fact and Decision                                        10

Case No. 107502

---

## DOCUMENTATION ENTERED INTO RECORD FEBRUARY 14, 2007

| 24. | Parent's Proof of Residency for Valley Stream, 8/18/05, 6 pp. | Department of Education |
|-----|---------------------------------------------------------------|-------------------------|
| 25. | Request for Impartial in Valley Stream, 8/18/05, 5 pp. | Department of Education |
| 26. | Letter Re: Resolution Session, 8/24/05, 2 pp. | Department of Education |
| 27. | Letter Re: Resolution Session, 8/30/05, 2 pp. | Department of Education |
| 28. | Decision on Insufficiency, 9/6/05, 4 pp. | Department of Education |
| 29. | Letter Re: Non-Resolution, 9/9/05, 2 pp. | Department of Education |
| 30. | Transcript from Impartial Hearing, 9/16/05, 27 pp. | Department of Education |
| 31. | Subpoena for Impartial Hearing, 10/05, 3 pp. | Department of Education |
| 32. | Decision in Impartial Hearing, 10/14/05, 7 pp. | Department of Education |
| 33. | Request to Reopen Impartial Hearing in Valley Stream for the 05-06 School Year, 9/25/06, 1 p. | Department of Education |
| 34. | Regulations, 4/14/05, 12 pp. | Department of Education |



# The University of the State of New York

## The State Education Department
### State Review Officer

No. 07-046

Application of the **NEW YORK CITY DEPARTMENT OF EDUCATION**, for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability

Appearances:
Michael Best, Esq., Special Assistant Corporation Counsel, attorney for petitioner, Vida Alvy, Esq., of counsel

Sanford S. Stevens, P.C., attorney for respondent, Sanford S. Stevens, Esq., of counsel

### DECISION

Petitioner, the New York City Department of Education, appeals from a March 26, 2007 impartial hearing officer decision which found that petitioner failed to offer respondent's daughter an appropriate educational program and ordered it to reimburse respondent for her daughter's tuition costs at the Winston Preparatory School (Winston) for the 2006-07 school year. The appeal must be sustained.

At the commencement of the impartial hearing on January 11, 2007, respondent's daughter was 14 years old and attending eighth grade at Winston where respondent unilaterally placed the student in September 2005 (Dist. Ex. 25 at p. 2[1];Tr. pp. 155-58). Winston has not been approved by the Commissioner of Education as a school with which school districts may contract to instruct students with disabilities (8 NYCRR 200.1[d], 200.7]).

By parent report, the student experienced language difficulties beginning as a toddler (Tr. pp. 100-102). As a young child the student received services through early intervention and the

---

[1] There are two District Exhibits labeled 24 and 25.

committee on preschool education (Tr. pp. 102-06). The student attended private schools for kindergarten through third grade (Tr. pp. 107-115). It appears petitioner developed IEPs for the student during this time, but that the student did not receive services from petitioner (Tr. pp. 143-48). For fourth and fifth grade the student attended a 15:1+1 special class in the Valley Stream Central High School District (Valley Stream), where she received related services of speech-language therapy and counseling (Dist. Ex. 17 at p. 2). Respondent reported that the student's self-esteem "took a beating" in the public school (Tr. pp. 117-19). For sixth grade respondent enrolled the student in Growing Life Christian Academy, where she received resource room services (Dist. Ex. 17). Based on the student's grades, she was not invited to return to the school for seventh grade (Tr. pp. 119-121; Dist. Ex. 17 at p. 2). In June 2005 the CSE for Valley Stream met and recommended the student for a 15:1+1 special class with related services of speech-language therapy and counseling for the 2005-06 school year (Dist. Ex. 1). However, respondent chose to unilaterally enroll the student in Winston (Dist. Ex. 25 at p. 2). According to respondent, in October or November 2005 she and her daughter moved from Valley Stream to Brooklyn (Tr. pp. 131-32).

The student was seen by an audiologist in May 2005 and found to have an auditory processing disorder (Tr. p. 55). She was recommended for and received private auditory integration therapy (Parent Ex. J). In July 2005 the student was diagnosed by an optometrist as having severe ocular motor dysfunction, accommodative insufficiency and infacility, severe binocular vision disorder of the converse and excess type and severe visual perceptual motor deficits in all areas (Tr. p. 88). The student began receiving private vision therapy in August 2005 (Dist. Ex. 19 at p. 3). The record[2] shows that a private psychoeducational evaluation of the student was conducted over the course of three days on April 20, 28 and May 13, 2006 (Parent Ex. H). Administration of the Stanford-Binet Intelligence Scale: Fifth Edition yielded a Verbal IQ score of 75 (5th percentile), a Non-Verbal IQ score of 69 (2nd percentile) and a full scale IQ score of 70 (2nd percentile) (Parent Ex. H at p. 3). The psychologist reported that the student had borderline cognitive abilities; however, she demonstrated a relative skill with reasoning inductively and deductively and with visual-spatial processing (Parent Ex. H at pp. 4-5, 8). The results of achievement testing revealed that the student's scores on measures of oral language and broad reading were commensurate with her overall cognitive abilities, while scores on measures of broad math and written language were somewhat above (Parent Ex. H at p. 5). According to the evaluating psychologist the student demonstrated difficulty decoding, reading fluently and comprehending what she had read (id.). The psychologist characterized the student's oral language skills as poor; however, noted that they improved when information to be remembered was more meaningful (Parent Ex. H. at p. 8). The psychologist reported that the student's basic math skills were sufficient and that her mathematical reasoning skills were average but that her math fluency was poor (Parent Ex. H at p. 6). According to the psychologist, the student demonstrated a relative strength in her ability to process information and provide a written response rapidly (id.). The psychologist noted the student exhibited difficulty maintaining

---

[2] I note that the record contains multiple duplicative exhibits. I remind the impartial hearing officer it is her responsibility to exclude evidence that she determines to be irrelevant, immaterial, unreliable or unduly repetitious (8 NYCRR 200.5[j][3][xii][c]).

2

attention, a sense of inadequacy and oppositional and defiant behaviors (Parent Exs. H at p. 7). He diagnosed the student with attention deficit hyperactivity disorder-combined type (ADHD)[3], and also with oppositional defiant disorder (ODD) (Tr. p. 182; Parent Ex. H at p. 7). In October 2006, the student was diagnosed by a psychiatrist as having ADHD and ODD, as well as a learning disability (Parent Ex. G at p. 2).

Based on her diagnosed auditory processing disorder, the student received auditory integration therapy from July 15 through July 24, 2005 (Parent Ex. J). A one year post auditory integration therapy follow-up evaluation was conducted on June 30, 2006 (Parent Ex. J at 1). The student's standard (and percentile) scores on the SCAN-C: Test for Auditory Processing Disorders in Children were reported as follows: filtered words 10 (75th percentile), auditory figure ground 1 (1st percentile), competing words 1 (1st percentile), competing sentences 1 (1st percentile) (id.). The student attained a total test standard score of 48 which was at the 1st percentile (id.). On the Staggered Spondaic Word Test the student's total error score was 26, which was significantly below the mean (Parent Ex. J at p. 2). The audiologist's report indicated that the student's pattern of errors was indicative of auditory processing deficits, with a severe decoding type deficit, which often manifested itself as poor phonic skills, as well as receptive language and articulation difficulties in earlier years (id.).

Respondent attempted to notify petitioner several times during the summer 2006 that she and her daughter had re-established legal residence in New York City (Parent Ex. D at p. 3). By letter to the Region 9 Committee on Special Education (CSE) dated August 25, 2006, respondent requested an evaluation for her then 13 year old daughter, stating that her daughter had been attending Winston since September 2005 and would be attending eighth grade starting September 2006 (Parent Ex. D). A meeting of petitioner's CSE was scheduled for September 12, 2006 for the purposes of formulating an Individualized Education Program (IEP) for the student (Dist. Ex. 16). This meeting was subsequently postponed at respondent's request and rescheduled (Tr. p. 169; Dist. Ex. 16).

Petitioner's CSE reconvened on October 6, 2006 for the purposes of formulating an IEP for the student (Dist. Ex. 22). Present at the meeting were a district representative, a general education teacher, a school psychologist, a school social worker, a special education teacher, an audiologist, a speech and language pathologist (signed in under "parent member"), four special education instructors from Winston who participated telephonically, an HHVI psychologist[4], respondent and her attorney (Dist. Ex. 22 at 2).

---

[3] There is a discrepancy between the psychologist's testimony and his written report in that the report has a typed diagnosis of "Attention-Deficit/Hyperactivity Disorder-Combined Type," and the word "Combined" is lined out and the word "Inattentive" is handwritten above it. In testimony, the psychologist stated that the diagnosis is "Attention-Deficit/Hyperactivity Disorder-Combined Type, which means [that] she [is] both hyperactive impulsive and inattentive and she also can be diagnosed as Conditional Defiant Disorder".

[4] The HHVI psychologist is identified in the record as "a hearing and vision impairment specialist psychologist" (Tr. pp. 217-18).

3

The CSE reviewed respondent's private psycho-educational evaluation (Dist. Ex. 22 at p. 4), and reports from the student's related services providers (Tr. p. 219). The IEP generated by the CSE reflected the results the private psychologist's intelligence and academic testing, as well as information contained in the reports of the student's private providers, including information related to the student's auditory processing and visual problems (Dist. Ex. 22 at pp. 4, 7, 9). According to the IEP the student required preferential seating to address her auditory processing deficits (Dist. Ex. 22 at p. 7), but did not have any management needs related her visual weaknesses (Dist. Ex. 22 at p. 9). The IEP included teacher estimates of the student's academic abilities (Dist. Ex. 22 at p. 3). The IEP also reflected diagnoses of ODD and ADHD (Dist. Ex. 9 at p. 6). As noted on the IEP the student was being seen by a psychiatrist; however, at the time of the CSE meeting the student's diagnosis and treatment regimen were unavailable (Dist. Ex. 22 at p. 8). The IEP reflected the results of standardized testing which placed the student's reading comprehension at the 3.4 instructional level and letter word identification at the 3.8 instructional level (Dist. Ex. 22 at p. 4). The IEP also noted that teacher estimates of these skills placed the student at the fifth to sixth grade instructional level (Dist. Ex. 22 at p. 3). Similarly, the IEP indicated that based on standardized testing the student's instructional level for mathematical calculation was 6.2 and 5.1 for problem solving skills (Dist. Ex. 22 at p. 4). Teacher estimates of these abilities placed the student at the fourth to fifth grade instructional level (Dist. Ex. 22 at p. 3).

The CSE recommended that respondent's daughter be classified as having an other health impairment and be placed in a 12:1 special class in a community school with related services of group counseling one time per week for 30 minutes, individual speech and language services one time per week for 30 minutes and group speech and language services one time per week for 30 minutes (Dist. Ex. 22 at pp. 1, 18-20). The IEP highlighted the following management needs: small class, counseling, teacher prompts, proofreading written work, highlighting main ideas and key words in passages, preferential seating and consistent and predictable schedule (Dist. Ex. 22 at pp. 3-5, 7). The IEP included goals related to developing skills in self-advocacy and negotiation, social interaction, problem solving, reading comprehension, spelling and writing mechanics, pragmatic language, expressive language, and solving mathematical word problems (Dist. Ex. 22 at pp. 10-17). Although respondent and her attorney were present for the CSE meeting there is no record of them objecting to the CSE's recommendations at the time of the meeting.

The central purpose of the Individuals with Disabilities Act (IDEA) (20 U.S.C. §§ 1400-1482)[5] is to ensure that students with disabilities have available to them a FAPE (20 U.S.C. § 1400[d][1][A]; see Schaffer v. Weast, 126 S. Ct. 528, 531 [2005]; Bd. of Educ. v. Rowley, 458 U.S. 176, 179-81, 200-01 [1982]; Frank G. v. Bd. of Educ., 459 F.3d 356, 371 [2d Cir. 2006]). A free appropriate public education (FAPE) includes special education and related services designed to meet the student's unique needs, provided in conformity with a written IEP (20

---

[5] On December 3, 2004, Congress amended the IDEA, however, the amendments did not take effect until July 1, 2005 (see Individuals with Disabilities Education Improvement Act of 2004 (IDEA 2004), Pub. L. No. 108-446, 118 Stat. 2647). The citations contained in this decision are to the newly amended statute, unless otherwise noted.

4

U.S.C. § 1401[9][D]; 34 C.F.R. § 300.17; see 20 U.S.C. § 1414[d]; 34 C.F.R. § 300.22)[6]. The burden of persuasion in an administrative hearing challenging an IEP is on the party seeking relief (see Schaffer, 126 S. Ct. at 532, 537 [finding it improper under the IDEA to assume that every IEP is invalid until the school district demonstrates that it is not]).

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim (Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 [1985]; Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (Burlington, 471 U.S. at 370-71). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP" (Burlington, 471 U.S. at 370-71; Application of a Child with a Disability, Appeal No. 06-121; see 20 U.S.C. § 1412[a][10][C][ii]).

The first step is to determine whether the district offered to provide a FAPE[7] to the student (see Mrs. C. v. Voluntown, 226 F.3d 60, 66 [2d Cir. 2000]). A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; Cerra, 427 F.3d at 192). While school districts are required to comply with all IDEA procedures, not all procedural errors render an IEP legally inadequate under the IDEA (Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]; Perricelli v. Carmel Cent. Sch. Dist., 2007 WL 465211, at *10 [S.D.N.Y. Feb. 9, 2007]). Pursuant to the IDEA, when procedural violations are alleged, an administrative officer may find that a child did not receive a FAPE only if the procedural inadequacies (a) impeded the child's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a FAPE to the child, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; see 34 C.F.R. § 300.513[a][2]; see also Matrejek v. Brewster Cent. Sch. Dist.,

---

[6] The Code of Federal Regulations (34 C.F.R. Parts 300 and 301) has been amended to implement changes made to the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Education Improvement Act of 2004. The amended regulations became effective October 13, 2006. With the exception of the CSE meeting of October 6, 2006, the majority of the relevant events took place after October 13, 2006. Therefore all references are to the amended regulations, unless otherwise noted.

[7] The term "free appropriate public education" means special education and related services that-
(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.
(20 U.S.C. § 1401[9]).

5

471 F.Supp.2d 415, at 419 [S.D.N.Y. Jan. 9, 2007]). Also, an impartial hearing officer is not precluded from ordering a school district to comply with IDEA procedural requirements (20 U.S.C. § 1415[f][3][E][iii]).

Both the Supreme Court and the Second Circuit have noted that the "IDEA does not itself, articulate any specific level of educational benefits that must be provided through an IEP" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 130 [2d Cir. 1998]; see Rowley, 458 U.S. at 189), although the Supreme Court has specifically rejected the contention that the "appropriate education" mandated by the IDEA requires states to maximize the potential of students with disabilities (Rowley, 458 U.S. at 197 n.21, 189, 199; see Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). What the statute guarantees is an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [internal quotation omitted]; see Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Thus, a school district satisfies the FAPE standard "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203).

The IDEA directs that, in general, a decision by an impartial hearing officer shall be made on substantive grounds based on a determination of whether or not the child received a FAPE (20 U.S.C. § 1415[f][3][E][i]). The Second Circuit has determined that "a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress not regression','" and if the IEP affords the student with an opportunity greater than mere "trivial advancement" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130; see also Perricelli, 2007 WL 465211, at *15), in other words, is likely to provide some "meaningful" benefit (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]). Objective factors, such as "the attainment of passing grades and regular advancement from grade to grade are generally accepted indicators of satisfactory progress" and one important factor in determining educational benefit (Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 382 [S.D.N.Y. 2006]; see Rowley, 458 U.S. at 203-04, 207 n.28; Walczak, 142 F.3d at 130).

By due process complaint notice dated October 7, 2006, respondent advised petitioner that her daughter attended Winston, and that respondent was requesting an impartial hearing for the purpose of "tuition reimbursement and other expenses related to her educational needs" (Dist. Ex. 23). The notice did not identify any concerns or objections to the October 6, 2006 IEP nor propose any resolution (id.). The complete text of the due process complaint notice is as follows:

> "Our firm represents the parents of [student]. She is a child with special needs and has been attending Winston Preparatory, a non-approved private school for the academic years '05-'06 and '06-07. We are requesting reimbursement of tuition and other expenses related to her educational needs. Please schedule an Impartial Hearing(s) on these matters as soon as possible. If you have any questions please let me know. Thank you for your assistance." (Dist. Ex 23).

6

On October 16, 2006, petitioner challenged the sufficiency of the due process hearing complaint and on October 17, 2006 the complaint was determined sufficient by the impartial hearing officer (Pet. Ex. I). On the first day of the impartial hearing petitioner made a motion to dismiss the impartial hearing arguing that "[a] party may not have a hearing on a due process complaint until the party or attorney representing the party files a due process complaint that meets the requirements of [federal regulations]" (Tr. pp. 4-5). In the alternative to dismissal, petitioner asked that respondent be directed to amend their "hearing request" so that petitioner would have "some notice as to what case they [sic] are being asked to defend." (Tr. p. 9). In response to petitioner's motion, respondent declined to specify problems with the IEP and noted that petitioner had the student's educational records (Tr. pp 10-11). The impartial hearing officer dismissed petitioner's hearing motion concluding that respondent's notice to petitioner that respondent sought tuition reimbursement was sufficient (Tr. pp. 12-13). I find that the impartial hearing officer erred in reaching that conclusion.

A due process complaint notice must meet the requirements of federal and state law relating to the sufficiency of the content of the complaint (see 20 U.S.C. § 1415[b][7][A]; 34 C.F.R. § 300.508[b];[8] 8 NYCRR 200.5 [i][1]). A due process hearing may not proceed unless the due process complaint satisfies the sufficiency requirements (see 20 U.S.C. § 1415[b][7][B]; 34 C.F.R. § 300.508[c]). In pertinent part, a due process complaint shall include the name and address of the child and the name of the school which the child is attending, a description of the nature of the problem of the child relating to the proposed or refused initiation or change, including facts relating to the problem, and a proposed resolution of the problem (20 U.S.C. § 1415[b][7][A][ii], 34 C.F.R. §300.508[b], 8 NYCRR §200.5[i][1]). The Senate Report pertaining to this new amendment to the IDEA noted that "the purpose of the sufficiency requirement is to ensure that the other party, which is generally the school district, will have an awareness and understanding of the issues forming the basis of the complaint" (S. Rep. 108-185, Individuals with Disabilities Education Act Senate Report No. 108-185, "Notice of Complaint," [November 3, 2003]). The Senate Committee reiterated that they assumed with the earlier 1997 amendments' notice requirement that it "would give school districts adequate notice to be able to defend their actions at due process hearings, or even to resolve the dispute without having to go to due process" (id.). The due process complaint in the instant case did not identify the nature of the problem, facts relating to the problem, or a proposed resolution to the problem. Therefore respondent failed to give petitioner requisite notice.

Not only was the due process complaint insufficient, it did not identify *any* concerns with the proposed IEP. A party requesting an impartial hearing may not raise issues at the impartial due process hearing that were not raised in its original due process request unless the other party agrees (20 U.S.C. § 1415[f][3][B]; 34 C.F.R. §§ 300.511[d], 300.507[d][3][i]; 8 NYCRR 200.5[j][1][ii]) or the original request is amended prior to the impartial hearing per permission

---

[8] The Code of Federal Regulations (34 C.F.R. Parts 300 and 301) has been amended to implement changes made to the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Education Improvement Act of 2004. The amended regulations cited became effective October 13, 2006, and accordingly they are applicable to this proceeding.

given by an impartial hearing officer at least five days prior to the hearing (20 U.S.C. § 1415[c][2][E][i][II]; 34 C.F.R. § 300.507[d][3][ii]; see Application of a Child with a Disability, Appeal No. 06-065; Application of a Child with a Disability, Appeal No. 06-139). In the instant case respondent raised no issues in its due process complaint and was allowed by the impartial hearing officer to raise two issues during the course of the hearing over the objections of petitioner. The impartial hearing officer erred in allowing petitioner to raise new issues during the course of the hearing (see Application of a Child with a Disability, Appeal No. 06-065).

Given that the impartial hearing officer erred in determining that the due process complaint was sufficient and erred in allowing new issues to be raised at the impartial hearing, I will annul her decision in its entirety.[9]

**THE APPEAL IS SUSTAINED.**

Dated:         Albany, New York
               June 13, 2007

                                          PAUL F. KELLY
                                          STATE REVIEW OFFICER

---

[9] The impartial hearing was held on January 11 and February 14, 2007. The impartial hearing officer rendered her decision on March 26, 2007 awarding tuition reimbursement, finding that: a) respondent failed to prove that the student resided in petitioner's district for the 2005-06 school year and as such, was not entitled to tuition reimbursement for that time period; b) petitioner failed to offer respondent's daughter a FAPE for the 2006-07 school year; c) respondent's placement at Winston was appropriate; and d) equities favor respondent. On appeal petitioner appeals on several grounds, including asserting the impartial hearing officer erred in determining the due process complaint to be sufficient. Respondent does not cross-appeal any determination of the impartial hearing officer.

8

## AFFIRMATION OF SERVICE

Sanford S. Stevens, an attorney, licensed to practice in New York and before this honorable court, do hereby affirm as follows:

I am not a party in this action. On July     2007 I served a copy of the Petition to Review the Order of the State Review Officer upon the Comptroller of the City of New York.

Sanford S. Stevens
SANFORD S. STEVENS, PC
244 Madison Avenue (#303)
New York, New York 10016
( 212 )  228 – 7273 (phone/fax)

**EDUCATION**

CITY OF N.Y. LAW DEPART.    GL
OFFICE OF CORP. COUNSEL
COMMUNICATIONS         M.S

2007 JUL 9 AM 9 59